IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2011

## CHARLES MACKLIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Nos. 08-00832; 08-06106      John T. Fowlkes, Jr., Judge**

_____

**No. W2010-01768-CCA-R3-PC  - Filed June 15, 2011**

_____

The Petitioner, Charles Macklin, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief. The Petitioner pled guilty to especially aggravated robbery and attempted first degree murder and received a sentence of 18 years to be served at 100 percent for the robbery conviction and a concurrent sentence of 18 years to be served at 30 percent for the murder conviction. The Petitioner challenges the voluntariness of his guilty plea and the performance of trial counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Charles Macklin.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Garland Erguden, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the Petitioner's guilty plea submission hearing on February 2, 2009, the State summarized the proof that it would have presented had the Petitioner's case gone to trial. On October 31, 2007, the Petitioner, along with four other individuals, robbed the victim at the Georgian Hill Coin Laundromat. The victim was robbed while he was in his office, which was surrounded by a glass enclosure that had a window through which the victim could make transactions. The Petitioner was the only individual armed with a handgun and

was standing outside of the office while pointing the handgun through the window at the victim. After one of the co-defendants handed the Petitioner some of the money through the window, the Petitioner put his hand back through the window and shot the victim. The victim had his hands raised and was in a defenseless position when the Petitioner shot the victim in the back of the left calf.

At the guilty plea submission hearing, the Petitioner did not indicate that he was unhappy with trial counsel or that he did not wish to plead guilty. On the contrary, he answered all of the trial court's questions and only expressed dissatisfaction with his sentence. When pressed by the trial court, the Petitioner stated that he understood that trial counsel did not have any control over the State's offer and that he still wanted to accept the offer and plead guilty. The Petitioner timely filed a petition for post-conviction relief in which he claimed that he did not voluntarily plead guilty and that trial counsel was ineffective.

The proof at the evidentiary hearing consisted solely of the testimony of the Petitioner and trial counsel. The Petitioner stated that he was 17-years-old at the time of the offense. He said that he had been represented by a different attorney when his transfer hearing took place in juvenile court and that he had yet another attorney once his case had been transferred to criminal court. He stated that by the time trial counsel was appointed to his case, he only had a few months before trial. He complained that trial counsel did not have enough time to prepare him for trial and that the videotape from the laundromat was the only evidence that trial counsel reviewed in preparation for trial. The Petitioner stated that he told trial counsel that he did not intend to shoot the victim but that the handgun had discharged accidentally. Trial counsel told the Petitioner that he could not tell from the videotape whether the shooting was accidental and that his "best option" was to accept the plea agreement.

The Petitioner testified that he ultimately decided to plead guilty because he was "confused." He said that he also felt forced to accept the plea agreement because trial counsel told him that the agreement was his "best option." Trial counsel warned him that he could receive a sentence of 25 or 30 years if he went to trial. The Petitioner said that he now believes that accepting the plea agreement was not his best option.

The Petitioner said that he did not understand the charges against him, that he was not familiar with the "law system," and that he did not really understand what he was doing. He said that he did not believe he should have been charged with especially aggravated robbery because he did not intend to shoot the victim. He said that trial counsel did not explain to him that it did not matter whether he intended to shoot the victim.

On cross-examination, the Petitioner said that he was in the ninth grade at the time of the offense, that he could read, and that he attended "[r]esources" classes. He said that he had been taking drugs at the time of the offense and that he told the police officers that he had been taking drugs. The Petitioner did not deny that he went into the store to rob the victim, that he was the only person with a handgun, and that he was holding the handgun when the victim was shot. He stated that he wished he had gone to trial.

When questioned by the trial court, the Petitioner stated that he understood everything the trial court told him when he pled guilty and that he understood his charges. He admitted that he told the trial court that he was satisfied with trial counsel.

Trial counsel testified that when he received the case, he met with the Petitioner's former counsel and "went over the case" and possible defenses. He said that he discussed everything with the Petitioner and that they watched the videotape together. He said that he met with the Petitioner five or seven times before the Petitioner pled guilty. He said that the Petitioner cancelled some of their appointments and that he had to find the Petitioner to meet with him.

Trial counsel testified that the Petitioner told him that he accidentally shot the victim. Trial counsel said that he told the Petitioner that it did not matter whether the shooting was accidental and that he believed that the Petitioner understood that fact. Trial counsel said that one of the co-defendants was willing to testify that the Petitioner told them that he had intended to kill the victim when he shot at the victim. Trial counsel said that he discussed this statement with the Petitioner and that the Petitioner denied making the statement.

Trial counsel testified that the Petitioner accepted the plea agreement on the scheduled trial date. He said that he believed that the Petitioner should accept the agreement because the Petitioner was planning to testify that the shooting was an accident, which would not have affected the outcome of the case.

On cross-examination, trial counsel explained that the Petitioner was in resources classes because "he was a little bit slow in some things like math but [his] reading and his comprehension level [were] pretty much up to par." He said that the Petitioner told him that he had used marijuana before the robbery. He said that the assistant district attorney had offered the agreed sentence before trial but that on the day of trial, she threatened to seek consecutive sentencing if the Petitioner were convicted.

When questioned by the court, trial counsel testified that he had practiced law for approximately four and a half years and that when he represented the Petitioner, he had been practicing law for two and a half years. He said that the entirety of his practice focused on

criminal defense and that his associate, who had "over twenty years" of experience, would have helped him represent the Petitioner if they had proceeded to trial. He said that they were "well prepared" for trial.

Following the evidentiary hearing, the post-conviction court stated that there was "nothing to indicate that [the Petitioner] lacked understanding or knowledge of the circumstances" when he pled guilty. The court stated that trial counsel "did a great job defending [the Petitioner] and getting him what he had" and that the Petitioner was merely unhappy with his sentence. In its order denying relief, the post-conviction court found that the Petitioner had "failed to show in any way that his guilty plea was coerced, that his trial counsel was ineffective[,] or that he ha[d] been prejudiced."

## ANALYSIS

The Petitioner contends that he did not voluntarily plead guilty because he did not understand the charges against him and that trial counsel was ineffective for failing to explain the elements of the offenses to which he pled guilty. The State responds that the Petitioner understood his rights, the ramifications of pleading guilty, his potential sentence, the nature of the charges against him, and that his claim that the shooting was accidental was not a defense.

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his allegations by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather,

the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our supreme court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Because the plea must represent a voluntary and intelligent choice among the alternatives available, there are a number of circumstantial factors that should be considered when examining the voluntariness of a guilty plea. Id. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

To obtain post-conviction relief, the Petitioner has the burden of establishing by clear and convincing evidence that his guilty plea was entered involuntarily, unknowingly, or unintelligently. There was no evidence to suggest that the Petitioner was incapable of understanding the charges against him or his counsel's advice. While the Petitioner was not familiar with criminal proceedings, he was represented by competent counsel. Indeed, the evidence presented at the hearing reflects that trial counsel thoroughly and adequately investigated the Petitioner's case before advising him to accept the plea agreement. The

Petitioner was told that he did not have a valid defense against the offense of especially aggravated robbery, which provided for 100 percent service of his sentence and that he could receive consecutive sentences if he were convicted of both offenses following a trial. Indeed, the Petitioner's lack of intent to harm the victim was not a defense to the offense of especially aggravated robbery. See State v. Marcus Webb, No. W2002-00614-CCA-R3-CD, 2003 WL 214451, at *4 (Tenn. Crim. App. Jan. 29, 2003) ("The knowing mens rea of robbery refers to the "'knowing theft.'"), perm. app. denied (Tenn. Jul. 7, 2003). Moreover, the Petitioner's reliance on the accidental nature of the shooting was not supported by the evidence given his statement to his co-defendants after the offense and the fact that the Petitioner reached back through the window to shoot the victim after he had obtained the money. Additionally, it is true that if the Petitioner were convicted of both offenses following a trial, he could have received consecutive sentences. See Tenn. Code Ann. § 40-35-115(b)(4).

Before the Petitioner pled guilty, the trial court advised him regarding his rights, the charges against him, and the potential sentence he could receive if he proceeded to trial. The record reflects that the Petitioner voluntarily, knowingly, and intelligently agreed to a plea arrangement that would result in his avoidance of the potential of receiving consecutive sentences. Accordingly, we conclude that the post-conviction court did not err in denying the petition for post-conviction relief.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE